# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GREENPEACE, INC., et al., | Case No. 3:08-cv-00162-RRB |
| Plaintiffs, | |
| v. | **ORDER REGARDING MOTION TO ENFORCE MANDATE ON REMAND** |
| FORREST COLE, et al., | |
| Defendants. | |

## I. INTRODUCTION

Plaintiffs Greenpeace, Inc., and Cascadia Wildlands Project ("Plaintiffs") move for an order enforcing the mandate of the United States Court of Appeals for the Ninth Circuit and the amended judgment of this Court regarding the United States Forest Service's ("Forest Service") approval of four timber sale projects in the Tongass National Forest. Plaintiffs request at Docket 106 that, due to failure to comply with the Circuit Court's direction on remand, this Court vacate the four agency actions or, in the alternative, remand the four decisions back again to the Forest Service and enjoin the Forest Service from moving forward with the sales. The Forest Service responds at Docket 115 that it complied with the Circuit Court's memorandum opinion and this Court's remand order. Plaintiffs reply at Docket 118.

///

///

## II. GOVERNING PROVISIONS

### A.        NFMA

The National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 et seq., requires the Forest Service to develop and maintain forest resource management plans.[1] After a forest plan is developed, all subsequent agency actions must comply with NFMA and the governing forest plan.[2] Substantively, NFMA requires that forest plans "provide for diversity of plant and animal communities based on the suitability and capability of the specific land area."[3]

### B.        NEPA

The National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 et seq., contains additional procedural requirements. Its purpose is to ensure the decision-maker will have detailed information on environmental impacts and to provide that information to the public.[4] The Forest Service must prepare an Environmental Impact Study (EIS), which identifies environmental effects and alternative courses of action, when undertaking any management project.[5] "'In contrast to NFMA, NEPA exists to ensure a process, not to mandate particular results.'"[6] Under NEPA, the

---

[1] 16 U.S.C. §§ 1604(a).

[2] 16 U.S.C. §§ 1604(I).

[3] 16 U.S.C. § 1604(g)(3)(B).

[4] *Ecology Center v. Castaneda*, 574 F.3d 652, 656-57 (9th Cir. 2009) (*citing Inland Empire Pub. Lands Council v. U.S. Forest Serv.*, 88 F.3d 754, 758 (9th Cir. 1996)).

[5] *Ecology Center* at 657.

[6] *Ecology Center* at 657 (*quoting Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1063 (9th Cir. 2002)).

agency need only take a "hard look" at its proposed action.[7] However, the EIS "must respond explicitly and directly to conflicting views in order to satisfy NEPA's procedural requirements."[8] In order to determine whether an EIS is required, NEPA regulations allow an agency to prepare a more limited document, known as an environmental assessment ("EA").[9] An EA is a "concise public document" that "briefly provide[s] sufficient evidence and analysis for determining whether to prepare an [EIS]."[10] If the agency determines on the basis of the EA that an EIS is not required, it must then issue a "finding of no significant impact" ("FONSI"), which is a document "briefly presenting" the reasons that the agency action will not have a significant impact on the human environment.[11]

### III. FACTUAL BACKGROUND

Established September 10, 1907, the Tongass National Forest covers nearly 17 million acres across southeastern Alaska. Pursuant to the requirements of NFMA, 16 U.S.C. §§ 1600–1614, the Forest Service adopted a revision of the Tongass National Forest Land and Resource Management Plan in 1997 ("1997 Forest Plan"), which was subsequently amended again in 2008 ("2008 Forest Plan"). There are four projects challenged by Plaintiffs which were approved pursuant to the 1997

---

[7] *Ecology Center* at 657 (*quoting* Neighbors of Cuddy Mountain at 1070).

[8] *Earth Island Institute v. U.S. Forest Service*, 442 F.3d 1147, 1172 (9th Cir. 2006), *cert. denied*, 127 S. Ct. 1829 (2007), *abrogated on other grounds*, *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365 (2008).

[9] *See* 40 C.F.R. §§ 1501.3, 1501.4.

[10] 40 C.F.R. 1508.9(a).

[11] 40 C.F.R. §§ 1501.4(e), 1508.13.

Forest Plan: Scott Peak, Overlook, Traitors Cove, and Soda Nick. For each of the four projects, the Forest Service conducted an environmental analysis in accordance with NEPA, including either an environmental impact statement ("EIS") or an environmental assessment ("EA").

### A. Initial Forest Service Actions

#### 1. 1997 Forest Plan

The 1997 Forest Plan was ultimately adopted based on a Final Environmental Impact Statement ("FEIS"), which discussed the planning process and analysis used to develop the Forest Plan, described and analyzed the alternatives considered in detail, and discussed public objections to the plan. Two local species were identified within the 1997 Forest Plan, the Sitka black-tailed deer ("deer") and the Alexander Archipelago wolf ("wolf"), as "management indicator species."[12] The 1997 Forest Plan requires the Forest Service to "[p]rovide the abundance and distribution of habitat necessary to maintain viable populations of existing native and desirable introduced species well distributed in the planning area."[13] The Forest Service was directed by the 1997 Forest plan to accomplish this by "[p]rovid[ing] sufficient deer habitat capability to first maintain sustainable wolf populations, and then to consider meeting estimated human deer harvest demands."[14] Guideline WILD112 XI.A.3 set 13 deer per square mile as the necessary density to "maintain sustainable wolf

---

[12] 1997 Tongass National Forest Land and Resource Management Plan at 6-15 (Sitka black-tailed deer); *Id*. at WILD112.XI (Alexander Archipelago Wolf).

[13] Id. at WILD112.II.B.

[14] *Id*. at WILD112.XI.A.3.

populations" due to the fact that deer are a crucial prey for wolves.[15] However, the Forest Service later adopted an 18 deer per square mile guideline as the minimum to support hunting and wolves.[16]

### 2. The Projects

Under the 1997 Forest Plan, the four projects at the core of this matter were proposed, reviewed, and approved. While the geography, size, and timeline of actions by the Forest Service varied among the projects, the final decisions to approve each timber sale project were based on consistency with the guidelines of the 1997 Forest Plan.

### a. Scott Peak

The Scott Peak project was analyzed in a FEIS published in November 2005.[17] The Forest Supervisor signed a Record of Decision ("ROD") in November 2005, approving timber harvest within a project area of 24,110 acres.[18] This decision was reversed on an administrative appeal due to a question of the adequacy of the cumulative effects analysis.[19] Subsequent analysis was conducted and the same decision was issued on September 20, 2006, and was upheld during subsequent administrative appeal review.[20]

---

[15] AR 10_006743.

[16] AR 10_00004 at 2-155.

[17] Scott Peak Change Analysis, RR 06_0045 at 1.

[18] *Id*.

[19] *Id*.

[20] *Id*.

**b.      Overlook**

The Overlook project was analyzed in an EA published in April 2005.[21] The Forest Supervisor signed a Decision Notice in November 2005, approving a timber harvest within a project area of 8,400 acres.[22] This decision was withdrawn during the administrative appeal period in response to the appeal points on the road maintenance in the project area.[23] Subsequent analysis and documentation was conducted and included in a revised EA.[24] Part of this additional analysis included deer modeling at the Wildlife Analysis Area ("WAA") level as well as the project area level. A decision based on the same alternative was then issued on November 1, 2006. This decision was upheld during administrative appeal review.[25]

**c.      Traitors Cove**

The Traitors Cove project was analyzed in an EIS published in 2007.[26] The District Ranger signed a ROD in April 2007, approving a timber harvest of 905 acres within the Traitors Cove project area . This decision was upheld during appeal review.[27]

---

[21] Overlook Change Analysis, RR 06_0044 at 1.

[22] *Id*.

[23] *Id*.

[24] *Id*.

[25] *Id*.

[26] Traitors Cove Change Analysis, RR 06_0047 at 1.

[27] *Id*.

### d. Soda Nick

The Soda Nick project was analyzed in an EA published in April 2005.[28] The District Ranger signed the Decision Notice in June 2007, approving a timber harvest within a project area of 17,126 acres and this decision was upheld during appeal review.[29] Approximately one small sale from the Soda Nick project has been sold and harvested, consisting of 151 thousand board feet on 8 acres.[30] Another sale has been awarded allowing harvest of 256 thousand board feet on 11 acres.[31] This sale was suspended due to litigation and no harvest activity has yet occurred on that sale.[32]

### 3. The Deer Model.

The 1997 Forest Plan uses a deer winter habitat capability model ("deer model") to produce a relative ranking of habitat suitability for deer and, by extension, wolves.[33] The model is based on variables affecting winter habitat, a primary limiting factor on deer populations.[34] The variables include vegetation type, typical winter snow level, elevation zone, and aspect (south, north, east, and west-facing slope).[35]

---

[28] Soda Nick Change Analysis, RR 06_0046 at 1.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] See AR 10_007428-32.5.

[34] *Id.*

[35] *Id.*

This ranking is expressed as a habitat suitability index ("HSI") score. The HSI scores, ranging from 0.0 to 1.3 are used to estimate habitat carrying capacity or in other words how many deer the area can support.[36] In order to estimate habitat capability, the HSI score is multiplied by a constant, referred to as the "deer multiplier," to produce a Size Density model for estimating the deer carrying capacity for a given area. Between 1995 and 1997, the Forest Service adopted a varying deer multiplier that ranged from 75 deer per square mile up to 125 deer per square mile.[37]

### 4. 2008 Forest Plan

In response to the Ninth Circuit's decision in *Natural Resources Defense Council, et al., v. United States Forest Service, et al.*, the 1997 Forest Plan was subsequently amended through a ROD issued on January 23, 2008.[38] The new 2008 Forest Plan changed the settings to be used for deer modeling as well. Under the 2008 Forest Plan, the Forest Service standardized the HSI range to a scale of 0.0 to 1.0, utilized a deer model of 100 deer per square mile, and evaluated effects on only Federal lands but at all elevations.[39] The 2008 Forest Plan abandoned the use of VolStrata data, which identifies total timber volume and not forest structure, and instead used the Size Density model for information on forest stand characteristics.[40] The 2008 Forest Plan revised the guidance on how

---

[36] *See* AR 603_2251 at 5; AR 10_007430; AR 603_2267 at 1.

[37] AR 10_007428-32.5 at 7.

[38] 421 F.3d 797 (9th Cir. 2005).

[39] RR 01_0001 at 4-5.

[40] *Id.*

the model was to be applied at the project level and included additional language relating to providing deer habitat capability and reliance on modeling.[41]

Specifically, while the 1997 Forest Plan directs the Forest Service to provide sufficient deer habitat capability for sustaining wolf populations and then meeting human demands, which has continued to be 18 deer per square mile, the 2008 Forest Plan made the addition that this provision is required "where possible."[42] The 2008 Forest Plan also requires the use of the most recent version of the deer habitat capability model, that is "unless alternate analysis tools are developed."[43] Additionally, the 2008 Forest Plan adds that "[l]ocal knowledge of habitat conditions, spatial location of habitat, and other factors need to be considered by the biologist rather than solely relying upon model outputs.'"[44]

B.    Procedural History

Plaintiffs filed suit against the Forest Service on July 10, 2008, challenging the decision to approve the four projects at issue in this matter. Plaintiffs raised Claims under NFMS and NEPA, centering on the use of the deer habitat capability model by the Forest Service in analyzing project impacts to deer and wolves. This Court ruled in favor of the Forest Service on April 27, 2010, and Plaintiffs filed an appeal in the Ninth Circuit Court of Appeals. The Ninth Circuit reversed in part,

---

[41] 1997 Tongass National Forest Land and Resource Management Plan WILD1.XI.A.3 at 4-114; 2008 Tongass National Forest Land and Resource Management Plan WILD1.XIV.A.2 at 4-95.

[42] *Id.*

[43] 2008 Tongass National Forest Land and Resource Management Plan WILD1.XIV.A.2 at 4-95.

[44] *Id.*

vacated in part, and remanded the case to this Court on August 2, 2011.[45] The Ninth Circuit Court of Appeals found that the Forest Service had not sufficiently explained their methodology with regard to the HSI range and deer multiplier, which were the basis for the deer model analyses for the four timber harvest projects, and remanded on the NFMA claims.[46] The Ninth Circuit declined to reach the issues of Plaintiffs' challenges to NEPA and the use of the VolStrata vegetation classification system and vacated this Court's decision as to these claims.[47] The case was remanded to this Court with instructions to remand to the agency for further action. This Court issued an Order of Remand on October 18, 2011.

### C. The Forest Service's actions on Remand

The Forest Service determined that the best way to respond to this Court's Order of Remand was "by preparing a new analysis using current deer model methods."[48] This was accomplished by preparing a Supplemental Information Report ("SIR") for each of the four timber sale projects, limited in scope to a revised deer model analysis of the effects of the project alternatives to deer habitat capability.[49] The revised deer model analysis measured deer habitat capability by evaluating thoeretical number of deer and the theoretical density of deer, and a comparison of those results to

---

[45] *Greenpeace, Inc. v. Cole*, 445 Fed. Appx. 925, 928 (9th Cir. 2011).

[46] *Id*. at 4-5.

[47] *Id*. at 5-7.

[48] RR 01_0001 at 1.

[49] *See* Overlook EA SIR RR 07_0059; Scott Peak EIS SIR, RR 08_0067; Soda Nick EA SIR, RR 09_0081; Traitors Cove EIS SIR, RR 10_0084.

the original analysis in 2007 and after full implementation of the 2008 Forest Plan.[50] The Forest Service then evaluated whether the deer model reanalyses were consistent with the 2008 Forest Plan.[51]

Based on the SIR for each project, the Forest Service evaluated the necessity of preparing any supplements to the existing NEPA documents.[52] For these projects, which had NEPA documents published prior to the changes to the deer model, the Forest Service also relied on the analysis prepared for the 2008 Forest Plan in deciding on remand whether the model represented significant new information that necessitated a supplemental EA or EIS for each project.[53] The Forest Service ultimately did not find any new or changed environmental effects from this project that were not already evaluated and considered as part of he original project decision and the 2008 Forest Plan.[54] As a result, no supplemental EA or EIS were completed for any of the projects.

## IV. STANDARD OF REVIEW

The Administrative Procedure Act governs this Court's review of the actions of the Forest Service on remand. "Agency decisions that allegedly violate ... NEPA and [the] NFMA are reviewed under the Administrative Procedure Act ('APA'), and may be set aside only if they are arbitrary,

---

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] RR 06_0044 through 06_0047 at 3.

[54] *Id.*

capricious, an abuse of discretion, or otherwise not in accordance with law.' "[55] This review is to be "searching and careful," but the arbitrary and capricious standard is narrow, and this Court cannot substitute its own judgment for that of the agency.[56] An agency's decision is arbitrary and capricious if it fails to consider important aspects of the issue before it, if it supports its decisions with explanations contrary to the evidence, or if its decision is either inherently implausible or contrary to governing law.[57]

When reviewing "under the arbitrary and capricious standard[,]" a court is deferential to the agency involved.[58] The agency's action is to be "presum[ed] ... valid."[59] A court should not vacate an agency's decision unless it 'has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision

---

[55] *Or. Natural Res. Council Fund v. Goodman*, 505 F.3d 884, 889 (9th Cir. 2007) (*quoting Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1008–09 (9th Cir. 2006), 5 U.S.C. § 706(2)(A)).

[56] *In Def. of Animals, Dreamcatcher Wild Horse & Burro Sanctuary v. U.S. Dep't of Interior*, 751 F.3d 1054, 1061 (9th Cir. 2014) (*quoting Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 858 (9th Cir. 2005)).

[57] *Id.* (*quoting Lands Council v. Powell*, 395 F.3d 1019, 1026 (9th Cir. 2005)).

[58] *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658, 127 S. Ct. 2518, 168 L. Ed.2d 467 (2007).

[59] *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1084 (9th Cir. 2011) (*quoting Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007)).

that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'[60]

If an agency has not committed one of the these errors, and " 'a reasonable basis exists for its decision[,]' " the action should be affirmed.[61] But, in considering whether there is a reasonable basis for the action, a "reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'"[62]

## V. DISCUSSION

Plaintiffs seek an order from this Court vacating the Forest Service's approval of the four timber projects pursuant to the APA. Plaintiffs seek in the alternative an order from this Court remanding these four actions to the Forest Service for a second time and enjoining the Forest Service from moving forward with any activities pursuant to these four decisions until such time as the Forest Service has demonstrated compliance with the requirements of NFMA and NEPA. Additionally, Plaintiffs seek a declaration that the Forest Service has failed to comply with the remand order and mandate of the Circuit and District Courts, as well as the requirements of NFMA and NEPA.

This Court finds that two actions were clearly required by the Ninth Circuit's decision: 1) an adequate explanation of how the deer model supports the decision to approve the projects; and 2)

---

[60] *Nat'l Ass'n of Home Builders*, 551 U.S. at 658, 127 S. Ct. 2518 (*quoting Motor Vehicle Mfrs. Assn. of U.S., Inc.*, 463 U.S. at 43, 103 S. Ct. 2856).

[61] *Cal. Wilderness Coal.*, 631 F.3d at 1084 (*quoting Nw. Ecosystem Alliance*, 475 F.3d at 1140).

[62] *Marsh*, 490 U.S. at 377-78, 109 S.Ct. 1851 (*quoting Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L. Ed.2d 136 (1971)).

consideration of possible supplementation under NEPA. As to the first, the Court of Appeals concluded that the Forest Service had not adequately explained its use of the deer model; and therefore, had not provided an explanation and rational connection between the facts found and the choices made.[63] Accordingly, the Court of Appeals decision only required the Forest Service, if it wished to continue with the four projects, to provide an explanation of the use of the deer model.[64] As to the second action required, the Court of Appeals only required that the Forest Service reevaluate the need to supplement its NEPA documents after reexamining the deer analyses for these projects.

A.       **The Forest Service Failed to Explain How the Projects Comply with the 1997 Forest Plan and NFMA**

The Forest Service notes that it "fully considered" the 1997 Forest Plan, but implies that this full consideration only required discussion of the evolution of the deer model from 1997 through 2008 up to the present.[65] The Forest Service also argues that because the 2008 Forest Plan was an amendment of the 1997 Forest Plan, the two plans are sufficiently similar that they are interchangeable in considering the compliance of the deer model analyses.[66] This Court disagrees.

///

///

---

[63] *Greenpeace*, 445 Fed. Appx. at 927.

[64] Docket 115 at 14.

[65] Docket 115 at 22.

[66] *Id.*

1.      **Forest Service's Actions Must Comply with the Forest Plan in Effect at the Time the Decision was Made**

The NFMA provides not only the statutory framework, but also "specifies the procedural and substantive requirements under which the Forest Service is to manage National Forest System lands."[67] The forest plan implemented by the Forest Service requires that "all management activities undertaken by the Forest Service must comply with the forest plan, which in turn must comply with the [NFMA]."[68] Compliance with the NFMA and the governing forest plan, requires that the Forest Service conduct an analysis of any site specific actions, such as timber sales, to "ensure that the action is consistent with the forest plan."[69]

While the forest plan may change over time through amendment and revision, the relevant forest plan and regulations for evaluating compliance of the Forest Service's actions are those in effect at the time of the decision. In fact, the Forest Service is "required to comply with the regulations and forest plan in place at the time of its decision."[70] As the Forest Service points out, "the four timber projects at issue in this case were originally approved under the 1997 [Forest Plan]" and "the 1997 [Forest Plan] was properly referenced as the applicable forest plan by this Court as well as the Ninth

---

[67] *Lands Council v. McNair*, 537 F.3d 981, 988 (9th Cir. 2008) (en banc).

[68] *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 932 (9th Cir. 2010) (*quoting Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 962 (9th Cir. 2002)).

[69] Id.

[70] *Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 932 n. 8 (9th Cir. 2010) (*citing Envtl. Prot. Info. Ctr.*, 451 F.3d at 1017 n. 8.).

Circuit on appeal."[71] It is undisputed that the 1997 Forest Plan was the forest plan in effect at the time the decisions approving these projects were made.

### 2. The 1997 Forest Plan Still Applies to the Decisions Approving These Projects

Because the 1997 Forest Plan was in effect at the time the original approval decisions were made and those decisions must comply with the forest plan in effect at the time of the Forest Service's decision, the Court's analysis turns to the Forest Service's actions on remand. Specifically, whether the Forest Service's actions on remand from this Court were a new decision or simply supplemental actions based on the original decision to approve these projects. The Forest Service acknowledges that Plaintiffs challenged the Forest Service's decision to approve these projects while the 1997 TLMP was still in effect and that the Ninth Circuit was addressing Plaintiffs' challenge to those decisions.[72] The Ninth Circuit held that the Forest Service had not "adequately explained its decision to approve the four logging projects" and therefore the Court held that it "must remand to the agency to re-examine its Deer Model."[73] The Ninth Circuit returned the matter to the Forest Service to cure their failure to "articulate a rational connection between the facts found and the choices made."[74]

---

[71] Docket 115, p. 14.

[72] Docket 115, p. 22.

[73] *Greenpeace,* 445 Fed. Appx. at 928 n. 4.

[74] *Id*.

Although subsequent action and evaluation was required of the Forest Service in preparing the SIRs and Change Analyses on remand, these actions do not constitute a new decision. The Forest Service implies that it is illogical to perform the analysis and evaluation on remand based on the outdated 1997 Forest Plan. However, this supplemental analysis was the explanation and rational connection that the Ninth Circuit found deficient in the Forest Service's original decision based on the 1997 Forest Plan on appeal. Even if the Forest Service were to argue that the subsequent analysis and actions on remand were new decisions, which they have not, this argument is precluded by the agency's own policies. The Forest Service's Handbook states that a SIR is not a NEPA document and therefore 1) it cannot fulfill the requirements for revised or supplemental EIS or EA, 2) it cannot repair deficiencies in the original documentation, and 3) it cannot change the decision previously made by the Forest Service.[75] Because the SIRs prepared after the 2008 Forest Plan and on remand from this Court cannot change the original decisions, their function is purely informational and cannot be considered new decisions. Similarly, the Change Analyses prepared for each project were not new decisions and only discussed whether the relevant SIR presented "new information that would cause [the Forest Service] to reconsider [its] decision."[76] The Forest Service's actions on remand are therefore not new decisions and the 1997 Forest Plan remains the relevant forest plan based on the project approval decisions in 2006 and 2007.

Alternatively, the Forest Service contends that application of the 2008 Forest Plan, instead of the 1997 Forest Plan, is appropriate because it included transition language, under § 1604(i) of the

---

[75] FSH 1909.15-2011-1, 18.1.

[76] RR 06_0047 at 4.

NFMA, to allow for existing projects to move forward under the new amended forest plan.[77] However, as Plaintiffs point out, this sort of retroactive application of an amended plan has expressly been rejected by the Ninth Circuit.[78] A subsequent amendment "does not retroactively free the Forest Service of its obligation to ensure that the Project complies with the [forest plan requirements] as they stood at the time the Project was approved."[79]

The Court does not find it necessary to evaluate at length the similarities and differences between the 1997 and 2008 Forest Plans, as it is sufficient to note that they are not identical and therefore they are not interchangeable in evaluating the Forest Service's decisions to approve these projects. The entirety of the four projects were evaluated under the 1997 Forest Plan initially, however only the deer model analyses have now been evaluated under the 2008 Forest Plan. If the Forest Service is to rely on the original decision making process approving these projects on remand, then the analyses prepared for the 1997 Forest Plan alone must provide the adequate explanation and support sought by the Ninth Circuit.[80] Otherwise, the Forest Service has still failed to demonstrate "the reasoning [the Forest Service] used to approve the projects" in the first place.[81]

---

[77] Docket 118 at 15 *citing* 2008 Tongass National Forest Land and Resource Management Plan ROD at 68-70.

[78] *Friends of Southeasts' Future v. Morrison*, 153 F.3d 1059, 1070 (9th Cir. 1998).

[79] *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161 (9th Cir. 2011).

[80] *Friends of Southeasts' Future*, 153 F.3d 1070 (noting that NFMA "requires timber sales to be consistent with a single Forest Plan, not selected elements of two plans.").

[81] *Greenpeace*, 445 Fed. Appx. at 928 n. 4.

**3.  The Forest Service Wrongly Relied on the 2008 Forest Plan in Preparing the SIRs**

Based on the above, the Forest Service had two options for moving forward with these projects on remand: 1) defend the decisions approving these projects by re-examining its deer model under the 1997 Forest Plan or 2) reopen the decisionmaking process in order to apply the 2008 Forest Plan analysis for these projects.  However, the Forest Service has attempted a third course of action which seeks to defend the original decisions approving these projects based on SIRs and Change Analyses that rely on the subsequent 2008 Forest Plan. This court recognizes the Forest Service's desire to use the most recent deer model and forest plan, as well as the desire to avoid the complexities of commencing a renewed decisionmaking process. However, the Forest Service cannot have it both ways.

While the Forest Service's record on remand does include mention of the 1997 Forest Plan, the conclusions drawn regarding compliance and consistency are almost exclusively stated with regard to the 2008 Forest Plan. In fact, this Court notes that nowhere in any of the SIRs or Change Analyses for these four projects is there any discussion on how the deer model analyses are consistent with the 1997 Forest Plan in support of the approval decisions. Not only do they focus on the 2008 Forest Plan, but they highlight that there may be some variance from the analysis under the 1997 Forest Plan, performed in between 2005 and 2007 for these projects, and the analysis done under the 2008 Forest Plan in 2012 on remand.  For example the Soda Nick SIR notes that "[d]eer density. . . was consistently lower in the 2012 Reanalysis than in the original analysis in 2007 due to differences in analysis methods; however, the effects to deer density in the 2012 Reanalysis are within the range of effects disclosed in the analysis for the 2008 Forest Plan" and that "[t]he 2012

Reanalysis results are fully consistent with the 2008 Forest Plan. . . ."[82] The Overlook SIR also states that a drop in predicted deer density found in the 2012 Reanalysis is an effect "consistent with the range of effects disclosed in the analysis for the 2008 Forest Plan" and "[t]he analysis at the biogeographic province scale was not conducted in 2006; however, the 2012 Reanalysis results are fully consistent with the range of effects disclosed for the 2008 Forest Plan. . . ."[83] A final example from the Scott Peak SIR indicates that "analysis methods used in 2012 and 2006 are so different, we cannot expect to directly compare deer density between the analysis years," but it projected effects to deer density to be "consistent with projections after 100+ years and full implementation of the 2008 Forest Plan."[84] While these examples are not exhaustive, they demonstrate the Forest Service's heavy reliance on the 2008 Forest Plan to the exclusion of the 1997 Forest Plan.

As discussed above, the Ninth Circuit found that the Forest Service did not adequately explain the rational connection between the deer model analysis and the Forest Service's decision to approve the projects. The Forest Service was to address this failure on remand, but rather than providing an explanation for their original decision, the Forest Service engaged in new analysis under the subsequent forest plan. By relying on the 2008 Forest Plan, which was not part of the original decisionmaking process, to defend its approval of the projects, the Forest Service failed to address the specific deficiency noted by the Ninth Circuit in remanding this matter. While the Court recognizes that it may seem illogical to adhere to a forest plan that is now 17 years old, this Court

_____

[82] Soda Nick EA SIR, RR 09_0081 at 2.

[83] Overlook EA SIR RR 07_0059 at 11.

[84] Scott Peak EIS SIR, RR 08_0067 at 8.

cannot ignore that the entire decisionmaking processes for each of these projects are similarly based on the same dated plan. If the Forest Service wishes to rely on the original process for making the decisions on these projects, this Court cannot absolve them of the need to comply with the forest plan in place at the time of those decisions. By relying on the 2008 Forest Plan, the Forest Service has still not "articulate[d] a rational connection between the facts found and choices made" in the original approval decision for these projects.[85]

### 4.    Remand

Plaintiffs have sought vacatur or, in other words, an order of this Court setting aside the four decisions approving these projects and forcing the Forest Service to start the entire process from the very beginning.  This is not necessary. In support of vacatur, Plaintiffs cite the two factor test used by the Ninth Circuit in *California Communities Against Toxics v. U.S. E.P.A.*[86] The test looks at (1) the seriousness of the agency's error ("and thus the extent of doubt whether the agency chose correctly"), and (2) "the disruptive consequences of an interim change that may itself be changed."[87] In the present case, this Court finds that while the Forest Service has still not adequately explained its decision to approve the four logging projects, there has been no increase in the seriousness of the agency's error or interim changes since this matter was before this Court or the Ninth Circuit on appeal.  Vacatur was not found to be necessary then, and this Court finds that there has been no

---

[85] *Pac. Coast Fed'n of Fisherman's Ass'ns v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1091 (9th Cir. 2005).

[86] 688 F.3d 989, 992 (9th Cir. 2012).

[87] *Id*.

increase in seriousness since. The Forest Service's decision to prepare an updated deer model analysis using the most recent forest plan, while erroneous on remand, is understandable and this Court has no reason to anticipate the Forest Service's unwillingness to correct the error. The Forest Service has even indicated that early in the deer model reanalysis effort, the Forest Service addressed the 1997 Forest Plan in even more detail than the final SIRs demonstrate.[88] Providing explanation and analysis demonstrating consistency and compliance with the 1997 Forest Plan, if possible, would be just as permissible to correcting the error as vacatur and a new decisionmaking process, but would be less time and resource intensive. This Court therefore finds that vacatur is not necessary in the present case and the matter ought to be remanded to the Forest Service to provide updated SIR and deer model analyses based on the 1997 Forest Plan or for the original approval decisions to be revised and reissued in order to apply the 2008 Forest Plan, with appropriate public notice and comment. Therefore, Plaintiffs' motion to enforce mandate is granted with regard to the NFMA claims, but denied as to the request for vacatur.

**B.    The Forest Service Did Not Act Arbitrarily, Capriciously or Contrary to the Law by Determining That No Supplemental NEPA Documentation Was Necessary**

Because this Court has already found that the Forest Service failed to comply with NFMA, it is not necessary to reach the matter of the Forest Service's decision to not prepare supplemental NEPA documentation on remand. However, this Court notes that if the Forest Service had included discussion on remand detailing how the proposed projects are fully consistent with the 1997 Forest Plan, the Forest Service's actions under NEPA would have been appropriate. The use of SIRs and

---

[88] Docket 115 at 24.

Change Analyses by the Forest Service were only inappropriate in their omission of an adequate explanation of compliance under the 1997 Forest Plan and reliance on the 2008 Forest Plan. It is a "basic agency law principle that 'notions of fairness and informed administrative decisionmaking require that agency decisions be made only after affording interested parties notice and an opportunity to comment.'"[89] The Forest Service did properly adhere to this principle in making the original decisions to approve these projects under the 1997 Forest Plan and interested parties, such as Plaintiffs, made comments accordingly. The Forest Service's consideration of additional information, specifically the deer model reanalysis, would only necessitate further public comment if "[t]he agency makes substantial changes in the proposed action that are relevant to environmental concerns" or "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts."[90]

Review under APA is narrow and this Court is not to substitute its own judgement as to whether the updated deer model presents significant new information or circumstances which require supplemental assessments or impact statements. The use of an SIR to evaluate an interdisciplinary review of new information is the appropriate course of action in evaluating new information in this context and the decision on how to proceed is at the discretion of the Forest Supervisor.[91] In this case, each SIR states it "will be relied upon by the Forest Supervisor in deciding whether there is

---

[89] *California Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1110 (9th Cir. 2011) (*quoting Chrysler Corp. v. Brown*, 441 U.S. 281, 316, 99 S. Ct. 1705, 60 L. Ed.2d 208 (1979)).

[90] 40 CFR 1502.9(c)(1).

[91] *North Idaho Community Action Network v. U.S. Department of Transportation*, 545 F.3d 1147 (9th Cir. 2008).

ORDER RE MOTION TO ENFORCE
MANDATE ON REMAND - 23
3:08-cv-0162-RRB

'significant new circumstances or information' that requires a supplemental EIS [or EA] under NEPA (40 C.F.R. § 1502.9(c))."[92] This district has previously held that changes to a deer model do not necessarily present significant new information or circumstances, and this Court does not find differently here.[93] The error of the Forest Service on remand was the failure to properly apply the relevant forest plan in the analysis in defending the original decision to approve these projects. While the SIRs and Change Analysis are flawed in that regard, the Forest Service's reliance on SIRs and Change Analyses and its decision to not supplement its NEPA documentation are supported by the record on remand. The Forest Service's error stems from NFMA, not NEPA. Accordingly, Plaintiffs' motion to enforce mandate is denied with regard to the NEPA claims.

## VI. CONCLUSION

For the foregoing reasons, the motion for order enforcing mandate and vacating agency actions at **Docket 106** is hereby **GRANTED IN PART** and **DENIED IN PART**. This matter is hereby **REMANDED** to the United States Forest Service to make further findings and determinations consistent with this decision as outlined above.

**IT IS SO ORDERED** this 26th day of September, 2014.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

---

[92] *See* Overlook EA SIR, RR 07_0059 at 1; Scott Peak EIS SIR, RR 08_0067 at 1; Soda Nick EA SIR, RR 09_0081 at 1; Traitors Cove EIS SIR, RR 10_0084 at 1.

[93] *Tongass Conservation Society v. Cole*, No. 1:09-cv-00003-JWS (D. Alaska Dec. 7, 2009).